IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CHRISTINE M. DOWD, DAMON M.   )
MORRIS, and ROY I. MORRIS,        )
                                  )
       Plaintiffs,           )
                                  )
    v.                     )    Civ. No. 10-82-SLR
                                  )
NEW CASTLE COUNTY, DELAWARE, )
                                  )
       Defendant.        )

---

Thomas C. Marconi, Esquire and Paul E. Bilodeau, Esquire of Losco & Marconi, P.A., Wilmington, Delaware.  Counsel for Plaintiffs.

James H. Edwards, Esquire, Harshal Purohit-Patel, Esquire and Megan K. Sanfrancesco, Esquire of the New Castle County Law Department, New Castle, Delaware.  Counsel for Defendant.

---

**MEMORANDUM OPINION**

Dated:  September 21, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On February 1, 2010, plaintiffs Christine M. Dowd, Trustee of the Victor L. Minter Revocable Trust f/b/o Damon M. Morris (the "Trust"), Damon M. Morris in her individual capacity, and Roy I. Morris (collectively, "plaintiffs") filed the present action against New Castle County, Delaware (the "County" or "defendant"). (D.I. 1) The Trust is the record owner of the single family residence located at 414 Foulkstone Road in Wilmington, New Castle County, Delaware (the "Premises"). (*Id.* at ¶ 3) In their complaint, plaintiffs argue that the defendant's instant ticketing system, which allows the County to collect civil penalties for property code violations prior to providing a hearing on the issue, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs bring this suit as a class action on behalf of all County residents who have been fined under the accused ordinance. (*Id.* at ¶ 28) They request a preliminary and permanent injunction against the enforcement of the accused ordinance, damages in the amount of the penalties collected by defendant under the ordinance, punitive damages and costs. (*Id.* at ¶ 36) The court has jurisdiction over the present suit pursuant to 28 U.S.C. § 1331. Presently before the court is defendant's motion to dismiss for failure to state a claim.[1] (D.I. 19) For the reasons that follow, the court grants in part and denies in part defendant's motion.

## II. BACKGROUND

This case involves defendant's adoption and enforcement of ordinances relating

---

[1]Also pending are plaintiffs' motion for a preliminary injunction (D.I. 9) and plaintiffs' motion for class certification (D.I. 12). The court stayed briefing on these motions until its consideration of defendant's motion to dismiss.

to the maintenance of private property in New Castle County.  Plaintiffs Damon and Roy

Morris have resided on the Premeses for the past fourteen years.  (D.I. 1 at ¶ 3 & ex. M;

D.I. 5 at 3)  On this property exists a "brush pile" – a pile of tree limbs and twigs –

constructed by Mrs. Morris fourteen years ago.[2]  The brush pile existed sans concern

until May 2009, when it roused the dispute underlying the current litigation.

### A. The Ordinances at Issue

A review of the New Castle County Code is a necessary requisite to the

disposition of the issues at bar.  In 2005, the County enacted "Substitute No. 4 to

Ordinance No. 04-057 as amended by Floor Amendment No.1" (the "2005 Ordinance"),

creating Chapter 7 of the New Castle County Code entitled "Property Maintenance

Code" (the 2005 "PM Code").  The PM Code is derived from the International Property

Maintenance Code and addresses many common property concerns, for example,

accumulation of rubbish and improper maintenance of exterior structures.  The adoption

of the PM Code by the 2005 Ordinance was expected to "have no discernable fiscal

impact" on the County.  (D.I. 1 at ¶ 5-8; *id.*, ex. A)

As enacted, the 2005 PM Code provided for both civil and criminal enforcement

of its provisions.  Criminal actions could be initiated by either the Code Official[3] or the

---

[2]Although pictures of the brush pile are attached as exhibits to the complaint (D.I.
1, ex. M), clearer images can be found as exhibits to defendant's papers.  (D.I. 19, ex.
A)  The precise size of the brush pile does not appear to be of record; however, the
Delaware News Journal reported in February 2010 that the brush pile is approximately
six feet by three and a half feet in size.  *See*
http://m.delawareonline.com/detail.jsp?key=299466&rc=ts&full=1 (last accessed May
21, 2010).

[3]The PM Code defines "Code Official" as "[t]he Department of Land Use
employee designated by the General Manager of the Department of Land Use who has

2

County Attorney in the Courts of the Justices of the Peace, with convictions being appealable to the Court of Common Pleas. (Section PM 106.3.2.2 (2005),[4] citing 11 Del. C. § 5917)  Violations of the 2005 PM Code were deemed misdemeanor offenses and carried penalties ranging from $200 to $500 for the first criminal conviction and from between $250 to $1000 for a second conviction. (Section PM 106.3.2.3 (2005)) Separate criminal convictions could be obtained for each day any violation of the PM Code went unabated. (Section PM 106.3.2.4 (2005))  Alternatively, the 2005 PM Code provided that the County Attorney (or his or her designee) could initiate a civil proceeding for injunctive relief "to prevent, restrain, correct, abate, remove, or enjoin any violation" of the PM Code in the Court of Chancery. (Section PM 106.3.3 (2005))

Administrative enforcement was a third avenue of governmental redress provided for by the 2005 PM Code.  Under this enforcement scheme, notice of the violation would first be provided to the owner or person(s) responsible for the property.[5] (Section PM 106.3.1.1 (2005))  Notice was not required where the same violation was previously noticed (at any time), or when the violation jeopardized the health and safety of the public. (Section PM 106.3.1.1.3 (2005))

Section PM 106.3.1.2 provided for a pre-deprivation show cause hearing, as

---

the authority to administer and enforce this Chapter, or his or her duly authorized representative." (D.I. 1, ex. A at 17)

[4]For ease of reference, the court adopts the form of citation utilized in the PM Code and cites the code directly.  The 2005 PM Code is of record at D.I. 1, ex. A.

[5]The PM Code refers to the "owner" or "person responsible"of a property; for simplicity, the court will refer simply to the "owner" to denote an alleged PM Code violator.

3

follows:

> *Pre-deprivation show cause hearing.* If such violations are not remedied within the time specified, the Code Official shall schedule a Show Cause Hearing and provide the person an opportunity to defend his . . . conduct at a Show Cause Hearing prior to any penalty being imposed.  After such Show Cause Hearing, the Code Official shall render a decision within twenty (20) days and send a written letter to the person informing them of his or her decision and detail the reasons for any adverse action taken.  Any decision made by the Code Official is appealable pursuant to Section PM 106.3.1.5.

A two-hundred dollar ($200.00) administrative fine was assessable "for each day that the violation continue[d] in addition to any expense incurred by the County for the removal or abatement of the violation."  (Section PM 106.3.1.4.1 (2005))  The property owner was also deemed responsible for the costs of the enforcement of the 2005 PM Code as well as the costs of removal of the violation, or remediation, abatement, demolition, and the like.  Those costs would be imposed as "liens on the property to the extent permitted by law."  (Section PM 106.3.1.3 (2005))

An appeal process was provided by the 2005 PM Code.  Adverse decisions by the Code Official following the show cause hearing could be appealed (for a fee) to the Board of License, Inspection and Review (the "BLIR") within twenty (20) days of the written decision.[6]  (Section PM 106.3.1.5.1&2 (2005))  A public hearing was then afforded within forty-five (45) days of the filing of the appeal.  (Section PM 106.3.1.5.2 (2005))  A property owner could request a stay of the action being appealed by submitting a written request to the General Manager of the Department of Land Use, who was to grant the stay unless the Code Official demonstrated that such a stay would

---

[6]The 2005 PM Code provides for an appeal fee as set forth in an appendix not contained of record.

jeopardize the public welfare. (Section PM 106.3.1.5.6 (2005))  The BLIR was required to render a written decision within twenty (20) days of the public hearing. (Section PM 106.3.1.5.4)  The BLIR's decision could be appealed by writ of certiorari to the Delaware Superior Court. (Section PM 106.3.1.5.8 (2005))

In June 2008, defendant adopted "Substitute No. 1 to Ordinance No. 08-073 to amend New Castle County Code Chapter 7" (the "2008 Ordinance").[7]  (D.I. 1 at ¶ 9, ex. B)  The recitals section to the 2008 Ordinance detail the defendant's rationale in amending the PM Code (hereinafter, the "2008 PM Code").  Defendant believed that the criminal penalties imposed by the 2005 PM Code were ineffective, citing an approximately six month wait between the filing of criminal charges by the Office of Code Enforcement and the scheduling of a trial.  (*Id.*, ex. B)  By contrast, "subjecting property owners to civil penalties will allow for quicker resolution of code enforcement cases, have a greater deterrent effect on this unlawful conduct, and also eliminate the costs associated with criminally prosecuting offenders[.]"  (*Id.*)  Unpaid civil penalties could be added to defendant's property tax billing for the cited property, and may give rise to property liens.  (*Id.*)  Defendant also "intend[ed] to create a new appellate procedure applicable to the civil penalties imposed to make the appellate procedure more efficient and ensure the uniform and proper application of the [PM Code's]

---

[7]The 2008 Ordinance states that it shall self-effectuate "on July 1, 2008 or thereafter upon its adoption by County Council and approval by the County Executive or as otherwise provided in 9 Del. C. § 1156." (D.I. 1, ex. B)  The precise date that the amendments became effected is not clear.  The court notes that the PM Code was revised on July 14, 2009; the provisions at issue in this case remain unchanged. (*Compare*
http://library.municode.com/index.aspx?clientId=11287&stateId=8&stateName=Delawar e *with* D.I. 1, ex. B)

provisions." (*Id.*)  It was expected that the new provisions would generate over $37,000 in net revenue in the first year and enable defendant to add over $276,000 directly to the property tax bill for collection. (*Id.* ("Fiscal Note"))

In enacting the 2008 Ordinance, defendant established what is commonly referred to as the "Instant Ticketing System for Common Violations" (the "ITS"). (D.I. 1 at ¶ 9 et seq.)  The ITS may be used to issue tickets to the owner of a property, regardless of whether he or she resides on the premises, for violations of the 2008 PM Code sections relating to:  prohibited growth of weeds and grass;  accessory structures; inoperable or unregistered vehicles;  oversized vehicle parking;  parking of vehicles; outside storage of household items;  responsibility to keep shrubs and trees trimmed; swimming pools;  outside storage of debris;  accumulation of rubbish;  and disposal of rubbish.  (Section PM 106.3.1.1.3 (2008)[8])

The following instant ticketing procedure was established by the 2008 PM Code. Upon receipt of a complaint, a "notice of alleged violation(s)" is mailed to the property owner.  (Section PM 106.3.1.2.1 (2008))  The owner is thereafter responsible for correcting the violation within ten (10) calendar days.  If the Code Official determines that the violation persists beyond this point, a $50 ticket is issued by mail.  "This civil penalty shall double if not paid within thirty (30) calendar days from the date of the citation."  (Section PM 106.3.1.2.1 (2008))  A Code Official is not required to provide a violation notice prior to ticketing the same violation occurring within a twelve-month period.  (*Id.*)  The 2008 PM Code (like its predecessor) provides that a separate citation

---

[8]The 2008 PM Code is of record at D.I. 1, ex. B.  The court hereinafter cites the code directly.

may issue for each twenty-four (24) hour period that the condition giving rise to the
initial citation continues.  (Section PM 106.3.1.2.2 (2008))  These additional penalties
also double if not paid after thirty (30) days.  (*Id.*)

      The appeal process for the ITS is described as follows.

> Section PM 106.3.1.2.4, Appeals.  The owner of a property aggrieved by any civil
> penalty imposed pursuant to this Section may appeal to the Department of Land
> Use Code Official by sending a detailed **written explanation** of the grounds for
> the appeal, **along with payment in full of the civil penalty**, to the Code Official
> within twenty-one (21) business days of the date of the citation.  The Code
> Official shall forward the payment to the Office of Finance, which will credit such
> payment.  The Code Official shall issue a written decision affirming, modifying,
> reversing, revoking or vacating the civil penalty within forty-five (45) calendar
> days of receipt of the written explanation of the grounds for the appeal.  In the
> event the civil penalty is reversed, revoked, vacated or decreased in amount, the
> appellant shall be reimbursed for payment of the portion of the civil penalty
> vacated or decreased.  **Each citation received must be appealed separately.**
> The decision of the Code Official must be appealed in accordance with Section
> PM 106.3.1.5, Administrative Appeals.

(Section PM 106.3.1.2.4 (2008)(emphasis added))  It appears as though this citation is
incorrect, insofar as Section PM 106.3.1.5 concerns "Administrative penalty provisions"
such as fines and the institution of remedial action, while Section PM 106.3.1.6
concerns "Administrative appeals."

      According to Section PM 106.3.1.6, an appeal of the Code Officer's decision (or
any enforcement action under the 2008 PM Code) may be taken to the BLIR for an
appeal fee within twenty (20) days of the issuance of the adverse written decision.  A
public hearing will be held within forty-five (45) days of the filing of the appeal, and the
BLIR shall issue its decision within twenty (20) days of the hearing.  (Section PM
106.3.1.6.2&4 (2008))  As with the prior scheme, a stay of the action being appealed
may be requested in writing to the General Manager of the Department of Land Use,

who must grant the stay "unless the Code Official can demonstrate that the granting of the stay would jeopardize the health, safety or welfare of the public." (Section PM 106.3.1.6.6 (2008))  The BLIR's decision may be appealed by writ of certiori to the Delaware Superior Court. (Section PM 106.3.1.6.8 (2008))  These appeal provisions do not differ from the 2005 PM Code.

The 2008 PM Code also provides for the "[a]batement of [a] violation" by the Code Official or his designee when a property owner "fails to correct the violation after due notice, either actual or constructive, has been given to the person responsible, and where such person has had the opportunity to be heard by an administrative tribunal or court of competent jurisdiction on the issue of the violation." (Section PM 106.4 (2008)) The County is permitted to seek reimbursement for the costs of abatement by, *inter alia*, attaching a lien to the property.  An appeal of the abatement cost may be made to the BLIR or pursued in litigation, however, an unsuccessful litigant must pay the County's attorney fees. (Section PM 106.4.1&2 (2008))

A significant difference between the 2005 and 2008 PM Code concerns the ability of an accused to contest an initial citation under the ITS.  The pre-deprivation show cause hearing is no longer available for these certain (more common) types of property code violations. (D.I. 1 at ¶ 12)  Plaintiffs argue that the 2008 PM Code violates the Due Process Clause of the Fourteenth Amendment by depriving individuals of their property (i.e., money) as a condition precedent to any opportunity to contest the charge.

## B. The Parties' Dealings

On May 8, 2009, plaintiffs received a "Courtesy Letter" from the County's

8

Department of Land Use dated May 6, 2009. (D.I. 1, ex. E) The letter provided that, on

May 6, 2009, "the Office of Code Enforcement received a complaint alleging violation(s)

of [the PM Code] on [their] property." Plaintiffs were informed that, on or after May 18,

2009, the property would be inspected and "a $50 ticket will be issued for each and

every violation found." The Courtesy Letter provided a list of ten potential offenses,[9] but

did not specify which was the subject of the May 6 complaint. Plaintiffs were advised

that "[t]o avoid receiving a ticket(s) please carefully read the Instant Ticketing Process

below and make sure your property is free from **any and all** of the above violations."

(*Id.*) (emphasis added)

Plaintiffs allege that they made no changes in response to the May 6 Courtesy

Letter because they disagreed that any violation of the code existed on the Premises.

(D.I. 1 at ¶ 17) On May 20, 2009, the National Wildlife Federation ("NWF") sent

plaintiffs a letter recognizing the brush pile as an official Certified Wildlife Habitat site,

along with "Backyard Wildlife Habitat" certificate No. 118,999.[10] (*Id.*, ex. M) To date,

plaintiffs have not disturbed the brush pile.

The County's Office of Code Enforcement issued instant ticket no. 979023 on

October 2, 2009 (hereinafter, the "October 2 ticket"). (*Id.* at ¶ 18; *id.*, ex. F) The ticket

characterized the violation as the "outside storage of debris" in violation of PM 302.11,

---

[9]Specifcally: (1) overgrown grass; (2) accessory structure in disrepair; (3)
vehicles or trailers stored on the property; (4) junk, debris, or trash; (5) trash and
garbage accumulation or improper disposal; (6) oversized vehicle; (7) vehicle parked on
the lawn; (8) outdoor storage of household items; (9) swimming pool maintenance; or
(10) unkept bushes, shrubs and trees. (D.I. 1, ex. C)

[10]The date on which plaintiffs applied to the NWF for protected status for the
brush pile is not of record.

9

and assessed a $50 fine.  (*Id.*, ex. F)  Pictures of the brush pile were provided with the
ticket.  (*Id.*)  Plaintiffs were advised that, for each twenty-four (24) hour period that the
violation continued, a new civil penalty could be assessed, and that initial and additional
civil penalties would double if not paid within thirty (30) days of the respective citations.
(*Id.*)  An information sheet provided with the ticket detailed plaintiffs' right to appeal:
each penalty must be appealed separately to the Department of Land Use within 21
days of the citation; the appeal should be addressed to the Hearing Officer and consist
of an appeal form along with a "detailed explanation of their grounds for the appeal;"
"[t]he ticket must be paid in order for an appeal to be received;" and a decision would
issue in writing within forty-five (45) days.  A website address for the "Appeals Form"
and the address to mail the appeal were provided.  (*Id.*)  Plaintiffs state that they
"informed defendant for the second time that they respectfully disagreed that the
Premises were in violation of Code Section 302.11," but do not specify how this
occurred.  (*Id.* at ¶ 17)

Plaintiffs (hereinafter through counsel) attempted to appeal the October 2 ticket
on October 14, 2009 to the Department of Land Use by filing the appeal form without
advance payment of the $50 civil penalty; the form was returned on October 15, 2009
with a letter stating that an appeal would not be considered without full payment of the
civil penalty.  (*Id.* at ¶ 18, ex. G)  That same day, the Office of Code Enforcement
issued instant ticket no. 984803 to plaintiffs for failure to remedy the first cited violation
(hereinafter, the "October 15 ticket"), whereby plaintiffs were informed that their civil
penalties now totaled $100.  (*Id.*, ex. H)  On October 26, 2009, plaintiffs remitted $100

10

with an appeal form and an explanation that the brush pile was a Community Wildlife Habitat. (*Id.* at ¶ 21, ex. J)  Plaintiffs also submitted a form "request for extension to comply" with the direction in both tickets to remedy the alleged violation while an appeal was pending. (*Id.* at ¶ 20, ex. I)

On October 28, 2009, the Office of Code Enforcement issued instant ticket no. 98332 (hereinafter, the "October 28 ticket") for the failure to remove the brush pile. (*Id.* at ¶ 21)  By a letter dated November 3, 2009, plaintiffs were advised by that Office that "[w]e have received your request for an extension [of time to correct the code violation pending appeal] and this letter is to inform you that your request has been **denied**." (*Id.* at ¶ 22, ex. K) (emphasis in original)  No reason for the denial of an extension was given.

On November 5, 2009, the County Department of Land Use[11] issued a letter to plaintiffs entitled "New Castle County Code Official Notice of Instant Ticket Appeal Decision" (hereinafter, "the Decision"). (*Id.* at ¶ 23, ex. L)  Defendant noted plaintiffs' "attempt to provide a habitat for friendly creatures" but expressed concern that "brush piles can also provide an attraction for pests such as rats and snakes." (*Id.*, ex. L) Plaintiffs' appeal for the October 5 and October 15 tickets was denied, and the October 28 ticket was vacated "[b]ecause of the crossing of [ ] communication via the U.S. Postal Service." (*Id.*)  Plaintiffs were reminded that "a new citation can be issued once for each twenty-four (24) hour period the condition remains" and that the Decision could be appealed to the BLIR. (*Id.*)

––––––––––––––––––––

[11]By Vincent G. Kowal, Administrative Hearing Officer, Department of Land Use.

Plaintiffs attempted to appeal the Decision to the BLIR on November 17, 2009 by

filing a form "Application for Hearing before the Board of License, Inspection & Review"

with the Department of Land Use.  (*Id.* at ¶ 24, ex. M)  Included with plaintiffs' appeal

was a copy of the NWF's recognition of the brush pile as a Backyard Wildlife Habitat.

(*Id.*, ex. M)  The following day, the appeal to the BLIR was rejected and returned

because plaintiffs neglected to pay the applicable $500.00 non-refundable filing fee to

the BLIR.[12]  (*Id.* at ¶ 25)  Plaintiffs re-filed their papers on November 20, 2009 with the

$500.00 fee.  (*Id.*, ex. N)  A hearing on plaintiffs' appeal was held before the BLIR on

December 23, 2009.  (*Id.* at ¶ 27)  Following this hearing, the BLIR announced that it

was reversing the Decision insofar as plaintiffs did not violate the 2008 PM Code.  No

written decision issued by the date the complaint in this case was filed on February 1,

2010.  (*Id.*)  Plaintiffs have not received a refund for the $100.00 they paid in civil

penalties.  (*Id.*)

## III. STANDARD OF REVIEW

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the

court must accept all factual allegations in a complaint as true and take them in the light

most favorable to plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200

(2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).  A complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief, in

order to give the defendant fair notice of what the . . . claim is and the grounds upon

---

[12]The fee schedules for the statute and letter from defendant do not appear to be of record.  Defendant does not dispute that a $500 fee is applicable to appeals to the BLIR.

12

which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted).  A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (alteration in original) (citation omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1959.

## IV. DISCUSSION

Plaintiffs bring the current action under 42 U.S.C. § 1983 alleging that the enforcement of the 2008 PM Code using the ITS violates the Fourteenth Amendment, which commands that "[n]o state shall . . . deprive any person of life, liberty, property, without due process of law[.]"  U.S. Const. amend. XIV, § 1.  A person claiming protection under the Fourteenth Amendment must first demonstrate that he or she has a protectable interest – of life, liberty or property.  Once a protectable interest has been established, "[t]he Supreme Court has interpreted [the Fourteenth Amendment] to provide two distinct guarantees:  substantive due process and procedural due process." *DeKalb Stone, Inc. v. County of DeKalb, Georgia*, 106 F.3d 956, 959 (11th Cir. 1997). Substantive due process includes among its protections the general protection against "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Id.*  To recover for an alleged procedural due process violation, plaintiffs must ultimately demonstrate that they were deprived of a

13

protectable interest by the state, and that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process. *See Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 679-80 (3d Cir. 1991).

### A. Protectable Interest

#### 1. Liberty interests

Plaintiffs at bar claim that they have a protectable liberty interest in "their right to use their property in the manner they see fit without government interference." (D.I. 1 at ¶ 14) More specifically, plaintiffs argue that

> [l]iberty includes keeping the brush pile without the specter of being fined $50.00 by defendant for each day that it remains, and without the threat of those fines compounding. It also includes keeping the brush pile without the worry that defendant will impose a lien on their property, or that defendant will send a notice to their mortgage company that may cause them to be in default under their mortgage, or that defendant will send someone to physically remove the brush pile from their property, and send them a bill for the cost, or that defendant will sell plaintiffs' home at sheriff's sale.

(D.I. 20 at 11-12)

Although the word "liberty" is broadly defined as "includ[ing] and comprehend[ing] all personal rights and their enjoyment" (D.I. 20 at 11, citing BLACK'S LAW DICTIONARY, 827 (5th Ed. 1979)), not all rights are protected by the Fourteenth Amendment. Indeed, the traditional sense of liberty includes freedom of bodily restraint and punishment and "a right to be free from and obtain judicial relief for unjustified intrusions on personal security." *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977). The concept of "liberty" historically also encompasses the exercise of fundamental constitutional rights, such as "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a

14

home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (collecting authority). The Eleventh Circuit has previously addressed the asserted liberty interest at bar, as follows:

> Appellant also argues that "the right to freely use one's property is fundamental and implicit in the concept of ordered liberty." It is true that property rights have been important common law rights throughout history and that they are protected in many situations by procedural due process. Nevertheless, common law rights are not equivalent to fundamental rights, which are created only by the Constitution itself. Any right in [a] nonconforming [use of one's land vis a vis zoning laws] is a state-created right.

*DeKalb Stone*, 103 F.3d at 959 n.6 (internal citations omitted).

The right to use one's property as he or she wishes is not a fundamental right in the constitutional sense, as fundamental rights are "generally limited to freedom from restraint" that impose an "atypical and significant hardship." *See Sandin v. Connor*, 515 U.S. 472, 484 (1995); *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 141 (3d. Cir. 2000).

### 2. Property interests

Plaintiffs have established protectable property interests, both in the unrestricted use and enjoyment of their land, *see Acierno v. New Castle County*, Civ. No. 93-579, 1995 WL 704976 at *17-18 (D. Del. Nov. 1, 1995), and in maintaining the use of their money between "(a) the time of paying the [instant ticket] and (b) the time of [review.]" *See City of Los Angeles v. David*, 538 U.S. 715-17 (2003).[13] Having established such

---

[13]Insofar as there is no indication that defendant has ever returned plaintiffs' civil penalties, the court declines to characterize plaintiffs' interest as *de minimus*, although it

15

protectable interests, the question remains whether defendant has violated either plaintiffs' substantive or procedural due process rights by the conduct at issue.

## B. Due Process

### 1. Substantive due process

As noted above, the court has previously recognized a protectable property interest in the unrestricted use and enjoyment of land where plaintiffs have alleged that the state's decision limiting the intended land use was arbitrarily or irrationally reached. *See Acierno*, 1995 WL 704976 at *17-18.  Such is not the case at bar.  Nowhere in their complaint do plaintiffs allege that the 2008 PM Code was arbitrarily or unfairly applied to them; rather, the crux of the complaint is that plaintiffs were unable to substantively contest the violation of the 2008 PM Code to the BLIR without first remitting $500.  At no point do plaintiffs allege that, absent the "Certified Wildlife Habitat"/"Backyard Wildlife Habitat" status afforded the brush pile, they would have been in compliance with the 2008 PM Code.

### 2. Procedural due process

Plaintiffs assert that defendant's manner of enforcing the PM Code using the ITS violates their procedural due process rights.[14]  (D.I. 1 at ¶ 36)  More specifically, notwithstanding that the initial, pre-penalty notice is nonspecific to the violation alleged,

---

notes that such a property interest is typically not viewed as a serious one absent a serious financial need. *See City of Los Angeles*, 538 U.S. at 717 (citing *Mathews*, 424 U.S. at 340, where the Supreme Court distinguished between benefits "not based on financial need" and welfare assistance "given to persons on the very margin of subsistence.").

[14]Plaintiffs do not allege that a meaningful appeal was not available to them or that the $500 filing fee worked a financial hardship on them.

a property owner receiving a ticket must wait a minimum of forty-five (45) days for a decision by the Code Official to issue. (Section PM 106.3.1.2.4 (2008)). Another forty-five (45) days may pass prior to the scheduling of a hearing before the BLIR, which need not issue a decision for twenty (20) days. (Section PM 106.3.1.6.2&4 (2008)) A property owner pursuing his appeal may receive a ticket for each one of these days. (Section PM 106.3.1.2.2 (2008)) Even if the ticket is vacated at the first stage of review (by the Code Official), the civil penalty for the initial ticket would have doubled by that time, without considering the receipt of any additional tickets during the review period, which additional tickets would also double after the expiration of thirty (30) days. (Section PM 106.3.1.2.1 (2008)) A property owner, under the 2008 PM Code, could find himself pursuing forty five (45) separate tickets through forty five (45) separate appeals with no cessation to the County's ticketing activity. (Section PM 106.3.1.2.4 (2008))

The court is mindful that an administrative stay is provided by the 2008 PM Code. The onus is on the Code Official to demonstrate to the General Manager of the Department of Land Use that a stay would jeopardize the public welfare (Section PM 106.3.1.6.6 (2008)); the 2008 PM Code provides no further detail in this regard. Plaintiffs essentially requested a stay in the form of their "request for extension to comply" while an appeal was pending; their request was summarily denied with no explanation. (D.I. 1 at ¶¶ 21-22 & ex. I, ex. K) It is not clear, therefore, that a property owner's property rights are necessarily protected during the appellate process. Although in certain circumstances this may result in the divestiture of a *de minimus*

17

monetary interest, in others, this interest could substantially compound.[15]   Significantly, defendant enacted the ITS for this purpose; it was viewed as a revenue-generating tool. (D.I. 1, ex. B ("Fiscal Note"))

For the foregoing reasons, plaintiffs have stated a claim for a violation of procedural due process.  Whether a pre-deprivation hearing is warranted requires an analysis under the sliding-scale approach promulgated by the Supreme Court in *Mathews*, and the court declines to undertake such an analysis here.  A factual record must be developed with respect to the costs and benefits associated with holding a pre-deprivation hearing and/or any other potential remedial mechanisms.  Defendant's administration of the 2008 PM Code's stay provision should be explored.

## IV. CONCLUSION

For the aforementioned reasons, the court grants defendant's motion to dismiss with respect to plaintiffs' liberty interest claim and property interest claims as it relates to substantive due process.  The court denies defendant's motion with respect to plaintiffs' property interest claim as it relates to procedural due process.  An appropriate order shall issue.

---

[15]The court notes that the 2008 PM Code's "Abatement" provision states that action vis a vis the property will not commence until the property owner has had an opportunity to be heard by "**an** administrative tribunal or court of competent jurisdiction." (Section PM 106.4 (2008) (emphasis added))  It is not clear whether an unfavorable determination by a first tribunal (such as the BLIR) could clear the path toward abatement pending appeal to the Delaware Superior Court or the Court of Chancery.